Mr. Chief Justice, and may it please the Court. Individuals who hold public office are still private citizens, too. When acting in their personal capacity, they retain their First Amendment rights to decide who can participate in a community discussion that they host at their own property. They are thus free to block users from their personal social media pages unless they chose to operate those pages in their official capacities instead. The only principled and workable test to determine the capacity in which they acted is to ask whether they exercised any duties or authorities of their job. And the answer is plainly no, where, as here, the state itself did not control or even facilitate their operation of the pages. The officials thus wielded no greater rights or privileges than any other private citizen denying access to their own property. The Ninth Circuit instead held that even if an official was not actually doing her job, state action exists so long as the page's appearance made it look like she was. But that type of reasonable observer inquiry is incapable of consistent application. It is also fundamentally misguided because the officials' power to block does not invoke the page's appearance at all. Respondents alternatively insist that petitioners were doing their jobs simply because they used the pages to communicate about their jobs. But that is the type of excessively broad job description this Court has repeatedly rejected. Because officials could operate such pages in either capacity, the state action test should require clear and objective evidence that is capable of differentiating between the two. That is essential to preserving the robust sphere of individual liberty the doctrine is meant to protect. I welcome this Court's questions. Counsel, if you had the exact same exchange here but from an official site of the school board, would it make a difference? Yes, Your Honor, that would be state action because that would be exercising the power Okay, so let's assume that the official has discretion to either the option to either do this on the school site or the school board site or on the personal computer. What's the difference in what the communication is? So in your first hypothetical, the power that's being wielded is the power to exclude someone from government property. Just like if it was a government building, the power to block someone from entering main justice is state action. In the actual case, what is happening is being excluded from private property. And the power to exclude someone from private property is private. Well, let's talk about that just briefly. What if you can access the site remotely from petitioner's computer at home but it is the school board site and it's not on government's computer? Well, the question is who controls the account and in this case it's undisputed that this is the account that belongs to petitioners in their individual capacity. It's an account that they created before they held office and it's an account that they will continue to hold after they leave office. So is this a site-by-site determination or a message-by-message? In other words, let's say you have a site that's used every now and then for what you might characterize as official announcements but the rest of the time it's, you know, my child got a blue ribbon or something like that. Do you say that, well, you look at each episode of blocking or whatever as governmental because they use it for governmental things from time to time or do you say, well, they blocked them for this? In other words, you go through the whole analysis with respect to each back and forth. So the specific conduct that's being challenged here is the blocking and so the question is, is the blocking official action? In general, I think that that's going to be answered at a site-wide level. It's either a government account or it's a personal account and that's true even if some of the speech could be viewed as official. So if, for example, a government official made an official announcement at a campaign rally, the announcement, the speech might be viewed as official in some sense but that wouldn't convert the campaign rally into a government forum where there was a constitutional right to enter. I'm not sure I followed the answer but let's say, what percentage of governmental blocking or back and forth do you have to have before you say, oh, the whole, every blocking episode should be quickly characterized as state action? Well, so I don't think it turns on a percentage, Your Honor. In general, when a public official is using their personal property to engage in speech that they can engage in either capacity, the right way of thinking about that in general is that all of that speech is personal. Now, I concede that if... I'm sorry, all of that, all of the speech on that site? Yes, because that is speech they can engage in in either capacity. Now, I do agree that there are certain things that they could do on these pages that would be governmental and for which there was a right of access. So, for example, the SG's office used the example of doing notice and comment rulemaking on a social media page. That's, of course, inherently governmental and if they're excluded from that, that would be state action and I would agree that that would be true whether they use the page in general for notice and comment rulemaking or just once. But the question... Counsel, I'm having, because I think the Chief has asked a very important question. Let's break that down in examples, okay? Facebook is somewhat easier because people can be blocked from commenting but they'll still have access to looking at the information, right? Okay. But let's assume that there's something went wrong with the city's website and the city is now asking the council member to post all of their evacuation programs and to have comments with respect to citizens who might need assistance. They've converted it into basically an official site. So, how does your test deal with that? So, as you said, if it's mixed personal and business, then it remains personal. So, on that hypothetical, I would agree that would be state action. So, the state would be responsible for any blocking that this individual had done of commenting people? Yes, but the critical reason why and why that follows from our test is because in your hypothetical... By the way, is your test identical to the Sixth Circuit's duty and authority test or authority test? Or you used the words control or facilitate, which the Sixth Circuit didn't. So, tell me what's the difference in what you're proposing. We think duty or authority is the right test. The hard question in these cases is figuring out whether you're exercising duty or authority. Control and facilitation is the way to figure that out and that's the answer to your initial question. Well, the Sixth Circuit is much narrower. It defines duty as something stated by law. But frankly, in my experience, there's a lot of customary laws, customary actions that are not defined by law but are expected of government officials. Like telling the mayor to post this information. Nobody writes that in law, but... We don't dispute that point and I don't think the Sixth Circuit does either, but the critical point... Oh, it does. It defines this much more narrowly. Your Honor, if they do, we don't agree with that, but the critical point is in your hypothetical, how we know that that state action is control. Your example was the mayor told the city administrator to do it. In the next case, the mayor couldn't have told the city administrator to do it on this page because it's their personal property. That's not what's happening and to go back to our case, there is no evidence in this case that anything... So, what do we do with what was then Twitter? I'm going to continue to call it Twitter because that's what it is here, okay? What do we do with Twitter where the blocking blocks, especially now, blocks access? Previously, you could still look at the Twitter account, you just couldn't post. What happens now when if you don't have your own Twitter account, you can't even look? And if you're blocked, you're not permitted to look. Again, it depends what you're being blocked from, and the critical point in these cases is that my clients, all of their speech was speech that they could perform in their individual capacity. Under this court's decision in Lane, even though they're government officials, they have the right to speak about the government in their individual capacity. What if you showed a Facebook page to a thousand people and 999 of them would think that this is an official page? Under your test, that wouldn't matter. That shouldn't matter. I'll give you two reasons why it shouldn't. So, the first, the conceptual reason, is because the challenge here is they're challenging blocking. And my client's power to block doesn't turn on the appearance. And here's a hypothetical that I think will make that pretty clear. Imagine you're a police officer, you finish your shift, you're running late to pick up your kids from school. So you go running down the street, still in your uniform, and you push someone out of the way. Everyone on the street probably assumes you're still doing your job and in hot pursuit of a felon, but that's not state action. You're acting in a purely personal capacity, and your power to push someone out of the way doesn't turn on your uniform. Suppose the town manager has a page. And the town manager puts the official seal of the town and says, this is the town manager's page. This is the place to look to find information about what the town manager is doing. And this is the place to express your views on the important issues that come before the town manager. And there's nothing personal on the page, but the town manager doesn't use any public resources to create the page. And there's nothing in his job description that says that he has a duty to have such a page. And he's not relying on any special authority in creating this page. And you would say that in that instance, the town manager can block comments based on viewpoint. So the town manager can block anybody who expresses criticism of what the town manager is doing, and thereby create the impression that everybody in town thinks the town manager is doing the right thing. So with one possible caveat, in your hypothetical, when you said this is the town manager's page, if he was saying this is the page I'm running in my official capacity, then I wouldn't take that position. But that statement has substantive content behind it. When you say this is the town manager's page in his official capacity, what you're essentially admitting is the town manager's boss can tell him what to do on the page. He's admitting at that point that it is a governmental page. But if instead, as I think your hypothetical was meant to suggest, he's just saying, I am the town manager. This is what I think. This is where you want to talk to me. That, under this Court's decision in Lane, is what any government official can do in their personal capacity. So that means President Trump's Twitter account was also personal? Yeah, I think that was a harder question, Your Honor, because there was in that case use of a government staffer to help him run the page. Suppose that there wasn't. Suppose that, you know, he gave every indication of writing his tweets himself. And suppose he had also posted them, so there wasn't a staffer involved. Yes, Your Honor, then I think that he's engaging in his First Amendment rights, under this Court's decision in Lane, to talk about the government in his individual capacity. But he seemed to be doing, you know, a lot of government on his Twitter account. I mean, sometimes he was announcing policies, even when he wasn't. I mean, I don't think a citizen would be able to really understand the Trump presidency, if you will, without any access to all the things that the President said on that account. It was an important part of how he wielded his authority. And to cut a citizen off from that is to cut a citizen off from part of the way that government works. So a couple of things about that, Your Honor. The first is, President Trump could have done exactly the same thing from Mar-a-Lago or a campaign rally. If he gave every one of those speeches at his personal residence, it wouldn't somehow convert his residence into government property. And in terms of people being cut off from it, people don't have a right to access other people's personal property. The blocking here doesn't turn on these people. I have to say, it seems a little bit, you know, to focus on the wrong end of the stick, if you will. I mean, the fact that it was his personal property seems neither here nor there. If really he was doing government on it, and wielding his authority on it, and announcing policy on it, and, you know, it was part of the way government operated. So here's why I don't think that's quite right, Your Honor. Imagine he had put on his page a clear disclaimer. This is my page that I'm using in my personal capacity to talk about the government. This is not an official page. Every single word on that Twitter account could have been the same. Why shouldn't we require that then, if you're right? In other words, it seems to me the problem that we're having is, even if we agree with you that government officials can operate in their personal capacity and in their official capacity, why should they get to choose whether or not they're doing one or the other without, say, making a clear disclaimer, or making it clear to people that this is actually happening in their personal capacity? I'll give you two reasons, one conceptual and one practical. The conceptual reason is because the First Amendment generally doesn't compel speech. It generally protects against compelled speech. Yeah, but you can't have it both ways. I mean, you know, to the extent that we know and we agree with you that the person can operate in one or the other, I don't understand why it would necessarily be a compulsion to have them do so clearly. Because what is basically being said is, if everyone agrees my clients could have said this in their individual capacity and had First Amendment rights to do so, but they will lose those rights unless they put up a disclaimer. No, no, no, I'm not saying they'll lose the right. You can go down Road A or Road B. You have the freedom to do that. The question in this case is, how do we know which you have chosen? Right, and so the disclaimer is essentially a condition that is being required to go down Road A rather than Road B. That is an odd thing to say that the First Amendment of its own force compels. Let me also give you a practical reason why this isn't the right way to think about it. You're setting up a trap for the unwary. There are lots of government officials in this country. They're probably not all going to read this court's decision. And if you adopt a rule that the only way they can exercise their rights under HALAC to exclude people from their personal property is to include a disclaimer, some of those people aren't going to do it, and they're going to lose their First Amendment rights. And that's the exact opposite of how the First Amendment normally works. This court normally adopts presumptions and rules that protect the First Amendment, that set up prophylactic boundaries to ensure that you don't inadvertently lose your rights. This is a case where there are First Amendment interests on both sides. I mean, just as there may be First Amendment interests in protecting the private speech of government employees, there are also First Amendment interests in enabling citizens to access the important parts of their government. That's what makes these cases hard is that there are First Amendment interests all over the place. But the difficulty is, as Justice Jackson said, it is entirely in my client's control whether these pages are used in their individual capacity or their official capacity. So whatever First Amendment interest is on the other side, it's extraordinarily weak because all we have to do is put up a disclaimer and their right completely evaporates. So on the one hand, you'd be adopting a rule that every government official in this country runs the risk of inadvertently losing control over their property because they didn't put up a disclaimer. On the other hand, you have a disclaimer, their clients are still blocked, and everything else happens exactly the same. Thank you, counsel. Justice Thomas? Justice Alito? Is the act that is at issue in this case what the person who owns the Facebook page says or is the act that is at issue the forum, so to speak, that is created by enabling comments? The act that's being challenged is the blocking from the page. So it's the forum, so to speak. Well, the specific act that's being challenged is being blocked from the page. How you characterize the page, whether you view it as a forum or not, is partly an underlying merits question. Well, no, it could be a private forum, it could be some sort of a public forum. And the First Amendment issues on the other side are the free speech issues of the people who are blocked. Right, but they don't have any First Amendment interest in accessing private property. That's this Court's decision in Halleck. And since this is a private account, there's no question that this is not owned by the government or controlled by the government. And it's entirely in my client's plenary power whether to open it up to the public. That's why I don't think that if you have any interest, they have very minimal interest. And it's one that could be wiped out with a disclaimer, and there are a lot of good reasons why the Court shouldn't require that. The other thing I will say about a disclaimer, though, Your Honor, is if there is concern about confusion, the right place to do that is by the State regulating it. Rather than this Court adopting as a rule of constitutional law that the First Amendment of its own force somehow requires a disclaimer, the much better way to handle this is the State of California, if they think there's a problem, if they think people are confused, they can regulate. They can regulate my clients because they're a government employer, my clients are government employees, the State has broader power to regulate in that capacity. And that's the way to deal with this issue if there's confusion. And that's especially true, to go back to the point I made earlier, the blocking doesn't turn on the confusion. My clients will be able to block them whether or not they were confused about the page, just like the officer running down the street. Justice Sotomayor? You keep saying that what matters is that this user, both a personal user and a government user, could do the same thing equally. I know that's important to the government as well. But I don't know why that matters. Meaning, if the issue, and it seems that what it's devolving down in this conversation, is whether this particular act in this context is government action or not, not whether the account is personal or business. Whether the account is personal or business may inform whether we have to take a second step or not. So if it's a personal account, then you have to figure out whether it's being used, and I think you said that, facilitated, being used for government business. That was the government's example of if the private account starts doing notice and comment on legislation, that process is governmental, isn't it? Yes, Your Honor. So let's assume a mayor says, I'm setting up a hotline for emergencies on my Facebook or Twitter. And if you have an emergency, call that hotline, and I will use the power of my office to set in motion government response for your emergency. Seems to me that that's government action, isn't it? The state is facilitating, by the duties it's given him, his ability to put government resources into action. The response to that phone call is undoubtedly government action. Whether setting up the phone call is, depends. So take, for example, mayor... So if he routinely uses or responds to those calls in an official way, that process doesn't become government action? He could exclude Muslims, Jews, whoever he wanted to exclude, blacks, whatever, women, because that's a social account? Imagine if Mayor Bloomberg, as an act of charity to the city of New York, had set up in his personal capacity a phone message or an Internet system like that. He paid for it out of his own pocket. No government resources were used for it. No one in the state of New York could tell him how to run that, because it was his own personal phone exchange. That would be personal capacity action. But why isn't that account facilitating his duties as a mayor? He's using it to now put the resources of the government to use as mayor. No, he, like any other private citizen, is helping people contact the government. Any private citizen has the ability to do that. And the question of whether a government official is acting in the capacity of government officials... Not every private individual has the ability to put the mechanisms of government into effect. Right, that's on the back end. I conceded that the back end response would clearly be state action. The problem I have is that it's all interwined. I don't think so, Your Honor, because, again, you can have that exact same phone system set up by some wealthy donor, and that clearly wouldn't be state action. That would be private charitable giving to help the government run better. And just like this court held in Lane, a government official could be still acting in their individual capacity, even when they're speaking about information they learn as part of their job. That doesn't mean that they're doing their job. The way to figure out whether they're doing their job is to figure out whether they're using government resources, whether the government can control what they're doing, whether they're doing something that only the government can do. None of that is true here. And to the contrary, these pages, the usernames of the pages are campaign slogans, because my clients were elected officials who had to run for re-election. So what they were doing is what incumbent officials all over the country do as a regular matter. They talk to their constituents to show what a good job they've been doing and why they should be re-elected. Well, I don't know why they had personal accounts, too, then. If it was a personal account, they could have done both things. That's talk to their friends and family without letting every person in town talk to them. The better point, I think, Your Honor, is they don't have a campaign account other than these ones. So if this isn't their campaign page... But they don't say it's their campaign page. Well, the user... They say it's their page as X official of Y city. So I'll say two things about that, Your Honor. First of all, since the usernames of the pages, more for PUSD and Zane for school board are both campaign slogans, that's a pretty good indicia that it is a campaign page. Another good indicia of the fact that it's a campaign page is that they didn't have another campaign page. So they would either have to be the only two officials in America who decided not to have a social media page when they were running for re-election or these were those pages. Thank you. Justice Kagan? So I guess just to press on this a little bit and going back to Justice Thomas's original question so I can make sure I understand the answer to it. There's a person and they become a school board member and they set up a private account. So they're not using a pre-existing account. They set up a private account. And the only thing on this account are things related to the school board. So it has, you know, we're having a meeting, the agenda, the resolutions, the meeting times, the minutes, job postings, official reports, whatever, all school board business. And there's also some commentary. You know, the board would like to know what you think about this. I would like to know what you think about this. So please come to the meeting. And indeed, please give your comments to me on this page about what you think of agenda item number three at our next meeting. And that's the content of the page, state action or not. No state action because that is speech that an individual could do in their private capacity and there's no objective evidence, not through any resources or anything else, that they're being done through control. Everything you just said could happen in my client's backyard. Everything you just said could happen if my clients went to church and asked their fellow congregants, hey, I have a difficult issue coming up next week. What do you think I should do? And when you say the control, I mean, I guess, I mean, there are some officials where there's a kind of line of command. But, you know, a school board member, well, they're a school board member. They are the control. Why do you need somebody, like, insisting on the content? They are the state. Well, so they are state officials, but they could be acting in either capacity. And the reason control matters is it's a way of disentangling the two. If your boss can tell you what to do, then we know you're acting as an official. If your boss can't tell you what to do, when the boss tells you what to do, that's subject to First Amendment balancing, then we know you're acting as in a personal capacity. I think it's clearer in the next case where it's the city administrator who has a boss, who's got a mayor. Now, you're right that in my case, the school board officials, there's limited oversight above them. But that's just a matter of positive state law. Imagine if the state of California had a czar of official webpages. All California official webpages are regulated by the czar. He says put up the state motto, do this, that, and the other thing, and don't do these other things. No one would think that that guy could tell my clients what to do on these pages. Thank you. Justice Gorsuch? I'm just curious. On your side of the fee, in both cases, we have a profusion of possible tests to choose among. You've offered one. The Solicitor General's offered another. The Sixth Circuit is a slight variance. You've now had time to stew on this case for a number of months and think about it. What's your best advice for us on your side of the fee, what test you'd propose? So I continue to think that the best test is to look to duties and authorities and to say that duties, if there is neither the exercise of duty nor authority, that's not state action. That's all you need to do to resolve this case. Now, that raises the further question of, well, how do you know whether there are duties and authorities? At that point, we're not talking about a test. We're talking about how to implement the test. And I think the things that the court should be looking at are objective indicia that are capable of disentangling the two capacities. So things like the use of resources, the exercise of supervision, the exercise of exclusive duties, those are things that will help you figure out, is this actually exercising duties and authorities of your office, or is it instead exercising your First Amendment rights under Lane to talk about the government but not as the government? And how does that test interact with Griffin, in your view? So in Griffin, the officer was exercising the authorities of his office. He was a deputy sheriff, he was wearing a badge, and he arrested someone as the deputy sheriff. So that's an authority case in your scheme. And the counter example is the hypothetical I gave earlier. A police officer in full uniform runs down the street, pushes someone out of the way, but he's doing it to pick up his kid. That may look like he's doing his job, but he's not doing his job, and he's not invoking his power. That would not be state action. There's no lower court that would find state action in a case like that. Lower courts have rejected state action in much closer cases than that. Thank you. Justice Kavanaugh? Just to press a little bit on how you would apply the test. So I'm assuming that the information that would be posted is not also posted on a government site. So it's only posted on the personal site. This picks up a little bit on some of Justice Kagan's hypotheticals. But suppose the city manager on the personal site says, we have new recycling rules. You have to use a blue bin. It has to be at the curb. It will be picked up on Wednesdays. If you have any questions, contact me. That's only on the personal site, not on the official site. Is that state action? There might well be an argument there, because in that point, I assume that there is a duty as a state official to announce the rules, right? People need to know what the rules are. Okay. So that's very important. I'm going to stop you there. Because when you described how to implement the test in response to Justice Gorsuch, you said resources, supervision, exclusive duties. So this is really important, I think, because a lot of what local officials do is announce rules. Is announcing rules state action? Not in and of itself. Okay. Well, you said the local officials around the country need guidance. That is definitely true. I agree. So announcing rules is part of what they do. They need a clear answer. What's the answer? I think the clear answer is if this is the only place they are announcing that rule, then that's going to be state action. Okay. So announcing you can't park on the even-numbered side of the street during snowstorms, that's state action. Yeah. But importantly, the start of your question. If it's only. Right. It's perfectly fine to announce it officially and then amplify that message on your personal. So a lot of this will depend on whether it's reposting or exclusive posting, I think, on the announcing of rules. Yeah. Okay. So what about notices, announcing notices? Okay. Snowing schools are closed tomorrow, and it's only on the personal site. Again, Your Honor. That's not a rule, but it's a notice. I think, in general, if what is being. . . The question, to take a step back, is whether you're exercising the duty of your office. I know. Those sort of things. That's not good enough for the local officials who need guidance. I agree, Your Honor. And so what I'm trying to think through on hypotheticals like that is it's fair to say that that is the exercise of the duty. And so if it's the announcement of something that you have an obligation to inform the citizenry of, then yes, I agree. And that might be if it's a rule or. . . It can have a lot of different things. I just don't want to go so far as to say that any time a government official tells the public anything, that is state action, because that's too far. Because there are lots of things that the government official could be telling the public purely in his personal capacity. But for most of the hypotheticals, I think you were asking in the alignment of questions you were about to ask, yes, if you're telling people things about the rules of the road of the government, things that as a governmental matter you have a duty to disclose because you can't just spring rules on people or not tell people things they need to know in their official capacity, then if that's the only place you announce that is your government account, then I assume that that's likely going to be a very strong indicia that you're using the account for government purposes. If I could say one last thing. . . Personal account, you meant. . . Sorry, personal account. One way of knowing that is in those hypotheticals, almost certainly your boss could tell you what to do in there, right? Well, you are the boss, to get back to the, I think, justice-making point. So in this case, yes, not in the next case. In the next case, the mayor is the boss. Last one, just reminders. A reminder about there have been a lot of thefts and burglaries in the neighborhood. Lock your cars if you're going away for a few days. Tell the police. And it's only on the personal side. Right, that's the line I was trying to. . . That sort of speech is something you could do. Any private citizen can do it. And government officials don't have any duty to do that. They could do that in their official capacity. So for that sort of speech, you're going to need something more. You're going to need to see that they're either using staffers to prepare it or their bosses are telling them to do it, but the speech by itself isn't going to be enough for something like that. I think you've distinguished announcing rules, if it's only on the personal side, from notices of government information, and that's kind of fuzzy, and reminders would not be. I think that's right, Your Honor. Again. . . That's the kind of practical information that people are going to need, I think. I hope so, if this Court adopts the right types of duties for foreigners. Thank you. Justice Barrett. So, Mr. Rubin, when you were having this colloquy with Justice Kavanaugh, you all were talking post by post. The Chief Justice asked you at the start, are we looking at this as whose account is it, or are we looking at specific actions? It kind of sounded to me, when you were talking to Justice Kavanaugh, that your position, which I kind of understood your initial position to be, we're looking at the account, but which is it? So, I think it's true that you're looking at the account and the blocking, but as I told the Chief Justice at the very end of our colloquy, and now with Justice Kavanaugh, if you use the account, even in part, for what is an exclusive governmental duty, to give notice to the public or engage with the public, I agree that at that point it's going to be state action. The reason why I think it's important to think about this at the account level, is there's a lot of speech that might be viewed as official, but isn't an official duty to provide information to people, like the hypotheticals Justice Kavanaugh was asking me. So, a way of differentiating the two. Announcing, for example, that I'm going to sign a bill. Announcing I'm going to appoint a judge. Those sort of things are things you could do, even if you view those as official in some sense, that doesn't mean that you're using the property where you make that speech in an official capacity. You can engage in that type of speech at a campaign rally, at a church, in your backyard. So, we are kind of looking post by post, I think. If you're talking about exclusive duties, I agree. Okay, and I have a question about this word duty. So, what is the point of talking about both duty and authority? Because it seems to me that duty, and this kind of runs throughout the brief, sometimes it's described as obligations, you described it just now as an exclusive government duty, a requirement that appears sometimes in the brief, but sometimes there are things you have the authority to do as a government official that you're not required or obligated to do. So, it seems to me that if you have the authority to do them, something that you have a duty to do is just a subset of authority. So, why are we talking about duty? So, look, I think you're right that duties and authorities in some sense are flip sides of the same coin in general, and that you can have exercises of authority that are permissive but not required. So, I agree with all that. I think authority does add something beyond duty. I think what it's helpful most for is things like the use of staffing, use of resources, things like that that don't really directly go to the question of is it duty, but it is the wielding of authority. Now, that sort of thing is relevant for two reasons. One, it's good evidence that you're wielding a duty or authority if you're using government resources or staffing. And two, it's possible that at least in some cases, the mere use of those resources alone could be state action. See, I mean, I guess I just think using the word authority, I mean, I get. In the Sixth Circuit case, that's what the opinion seems to be. That's the value of authority, I think, in the Sixth Circuit opinion. But it just seems to me like a weird way to describe it. I think of it more as evidence. Right. I mean, am I losing a whole lot if I don't want to use the word duty and if I just say authority? Maybe that would pick up some of the stuff that you're talking about anyway. I don't think you're losing a lot. I think you could frame it either way. As I said, I think they are flip sides of the same coin. Okay. You were talking a lot about property, which is the government's focus. So you've articulated the test, as Justice Gorsuch said. We have lots of articulations on offer on your side of the V. What is the difference? What's the daylight between the government's position and your position? You know, their focus on is this private property that the public official is inviting you on to? You know, the test that they propose versus the authority, duty, control test that you do. So I don't actually think there's any daylight between our positions, though you can ask my friend. They've obviously emphasized property as sort of this initial gating mechanism, whereas we view the fact that it's private property as quite relevant to determining, are you exercising duties or authorities of your office? But at the end of the day, I think the cases all sort of cash out the same way. Whether you apply our framework or theirs, you essentially end up in a spot where if you're using a private account and you're not exercising an exclusive governmental function and you're not using government resources and the government can't control it, then you should understand that to be acting in your personal capacity because people have the right as government officials to talk about their jobs in their personal capacity. And you should assume that when they do that on their own personal property, they're acting in their personal capacity. Okay, last question. At the beginning of your argument, you referred to unless someone is choosing to use their Facebook account, Twitter account, whatever, in their official capacity. In Justice Kagan's questions, we're getting to some of this. I think it's very difficult when you have an official who can in some sense define his own authority. So I think for a governor or, you know, President Trump, it's a harder call than someone like a police officer who's a subordinate. Or I could, you know, my law clerk could just start posting things and say this is the official business of the Barrett Chambers, right? And that wouldn't be okay. But if, you know, that wouldn't be okay. If, you know, Governor Newsom decides to do it, he has the authority to define the scope of his authority. I would have thought in your client's context, they don't actually have full ranging authority just as board members, right? Unless the board said we've taken a vote and you are the one who's our communications person. You are the point person on communications. Then you would look at a source of authority. But if in that context, I mean, I guess it just kind of depends official by official. I guess I'm not understanding in your specific for your client why there would be an argument even. It seemed like you were conceding a little bit in talking to Justice Kavanaugh about official announcements and that sort of thing. Would that be true for your client? Look, yes. I think if my clients, you know, if for example there was a slush fund at the board to, you know, use money for doing your job and my clients use that money to like buy a Facebook account or use advertising on Facebook, I don't think my clients would be acting in an ultra-reverious fashion. And I think that that would be exercising state action. Now, I do agree with you, Your Honor, that on the control piece of using control as evidence of whether it's governmental or not, it becomes harder the higher up you go in the chain because it's harder to identify a superior who can tell you what to do. But even take, for example, the governor of California. While the governor of California does have a boss, the boss is the people of the state of California who could, for example, amend their constitution. And they could amend their constitution and say that even the governor, when he's exercising his official capacity, here's what he can and cannot say on a social media page. And they certainly could not do that for this sort of page, for a page that he owned before he was the governor that he will own after he's the governor and that he uses only to say things that underlain he has a First Amendment right to say in his individual capacity. Thank you. Justice Jackson? So I guess I'm still not clear why the onus isn't on the government official to be clear about the capacity in which they're operating. I mean, I take your point that you can have an individual who's a public official and they can operate in both worlds, official and also personal. But to the extent that we're having a problem, or at least I'm having a problem, it's because we can't identify whether this particular action is occurring in one world rather than the other. And we've said in lines of cases like the Pickering line of cases, we've recognized that even though public employees have a First Amendment right to speak, they can be limited in that ability to speak. So it doesn't seem responsive to me, at least, for you to say, well, they have a First Amendment right, so they bear no responsibility in making clear as to when they are operating personally versus officially. So can you just say more about that? Sure. I'll try. I'll say three things. So the first is, again, the conduct that they're objecting to is the blocking. This is not a case where they're complaining because they were confused, that they thought it was official. And if they had known it was official, something else would have happened. Everything in this case would have been exactly the same if that page was plastered with disclaimers. Yeah, but it's not. No, I guess what I'm trying to understand is when we isolate the blocking, and you're right, that is the claim, we have to think about, as Justice Kagan pointed out, the implications of that on the First Amendment rights of the people who want to see the page. So what's happening is they're being blocked from either commenting or seeing the information that's being posted on this particular page. And when the official says, but that particular page is my private page and I'm operating in a private capacity, then I suppose we have one set of answers. But if we believe that that page is actually operating as the official government page and the person is being blocked, we might have a different set of answers. So the question is, with respect to the blocking, is it happening in a personal or an official capacity? And why wouldn't it be the public official's responsibility to say, if you're on this page and you're either seeing or not seeing things, understand this is a personal repository of information? So I guess what I would say, Your Honor, is if you can see that my clients could have done this in their personal capacity with disclaimers, the question is, where in the Constitution are they obligated to put up the disclaimer if they want to maintain those rights? If they want us to believe that they're doing it in their personal capacity, how else are we supposed to know? To be fair, they've got the burden of proof. They're the plaintiffs in this case. They're the ones who are arguing for state action. So the burden should be on them to show the opposite, not on my clients to disprove it. So you're saying that a public official can just make a decision subsilentio about which world they're operating in, not let anybody know, and it would be the burden on whoever is saying that you are violating my constitutional rights to determine that you were actually operating in the official capacity. In a case like this where there's no objective indication that they were doing it in their governmental role. There's no staffing, there's no resources, there's no control. What about the page, the way it looks? This is the other argument, right? Everything about this page's appearance is equally consistent with a campaign page. That's exactly what happened in the Eighth Circuit. A page that looked no different than our page, the judges just split. Can I just ask one more question? I'm sorry. Justice Sotomayor came up with a private hotline example to seek emergency help that I thought was really interesting. I hadn't thought of it before. And I understood you to say that the response, the government rushes to your house as a result of getting the communication would be official action. But I guess I'm not clear as to the blocking that would occur by the official from people that they didn't like with respect to a page that was designated as this is the opportunity to call for government help. I'm creating a Facebook page so that people can have a straight through hotline to government resources. The person, I guess, is saying this is a private page so I can block, you know, Latinos. I don't want any Latinos on this page, says the person. Is that a problem or maybe is that state action or not state action? I would think if that's all there is, I would say it's not because a private citizen could set up that exact same page. This is a page to get you access to government resources. But if they did, wouldn't that implicate all the lines of cases where we talk about or we think about whether or not a private citizen is actually acting in a way that's fairly attributable to the state? I mean, we don't just stop at saying, oh, a private citizen. I don't think any of those tests would be met. The one about joint action between the private party and the state, the Brentwood Academy line where you're looking at is this facilitating a state service you think would not apply? I don't think, again, if a purely private citizen, just think, you know, a wealthy person in the city said I want to make it more easy for people to call and get access to government things and sets up a page like that. That's not joint action. He's acting wholly independent of the government. All right, thank you. Thank you, counsel. Mr. Gershi. Mr. Chief Justice, and may it please the Court, we agree with petitioners that duty and authority is the right way to figure out in what capacity a public employee defendant is acting. But we think the Court should focus on the subset of cases involving a denial of access to property. In those cases, if the defendant is exercising an official duty to provide access, like hosting an official school board meeting, of course that's state action. It doesn't matter where it happens. But for other kinds of duties, and most important, where it's ambiguous, where it's the kind of thing a private citizen could do, but also within a broad description of the official's responsibilities, there we think the nature of the property should be all that dispositive. So if the defendant denies access to government property, probably state action. If the defendant denies access to her own personal property, she's probably acting in her capacity as a private property owner, not as an agent of the state. And that framework, especially insofar as it provides a default rule for hard cases, we think is more consistent with the purposes of the state action doctrine, will resolve these cases today and others like them, and will avoid the need for this Court to set forth a one-size-fits-all, broader duty and authority test of broader applicability. Welcome to the Court's questions, but happy to talk about them. What exactly is the property? The contract talks about terms of services, I guess. I'm not a Facebook person, but I assume they would not consider the service property. So what exactly is the property? Well, I think the property is a form of virtual property, but it is the account. You can post speech on there. You can have conversations on there. You can open it up to everyone or just to friends. It is a form of virtual property. It's like a virtual, I hate to use the word forum because that term is sort of overloaded in this context, but it's a virtual forum of sorts. It's no different from, say, a hotel that offers its ballrooms for rent to people, and you might sign a contract and have terms of service. But when you take that hotel, you have a certain degree of control. You have one of the sticks in the bundle of property sticks, and you can choose who gets invited, what you do there. This is just a virtual space of the same sort. So just a follow-up, do you think that you have to take into consideration the role of the provider, Facebook, too, since they can also evict you from this room that you're in or this account? Yeah, so not in these cases, and I agree that there are some really difficult questions as to the extent of ownership and control over this virtual property as between Facebook and Twitter and petitioners in this case. But what should be undisputed and is undisputed is that the Poway Unified School District has absolutely no ownership or control over these pages, and that's the relevant question for the state action question in these cases. What if something that looks an awful lot like an official event but is not labeled as such is held on private property? I think the question in these cases is the constitutional one of state action. This Court has often said the Constitution deals with substance, not shadows, and I think these sorts of appearances are the kind of shadows that shouldn't matter to the substantive question of whether to use petitioner's test. You know, it is an actual official duty and authority being exercised on that property, and I think this Court has rejected to the extent Your Honor is invoking reasonable observer kind of test. This Court has rejected it in a variety of contexts, most recently in the Coach Kennedy case. I mean, I think maybe to a reasonable observer, a lot of people would have thought that that coach was acting in his official capacity, but the Court didn't rely on reasonable observers, at least as it saw the facts. So we're going to delve into the facts and figure out the facts. Let's say in a small town the population is barely divided over an issue. Let's say it's whether they're going to close down their elementary school and send the children to another school 25 miles away to save money, and the mayor is in favor of closing down the school. So the mayor holds a meeting on public property, and everybody can go and express their views, and after that meeting the mayor says, well, that didn't go well. There was an awful lot of opposition expressed to this. Let's have another meeting, and this time we're going to have it on my farm, and I'm going to post people at the entrance, and we're going to exclude the people who spoke vociferously and articulately against my proposal. Is that allowed? So if I understand it. And the mayor is not running for re-election. He's term-limited, so this is not a campaign. So if I understand it and if I can assume that when he does it on his farm, he's not using any government resources, the security guards are paid out of his own pocket, totally fine, I think. Again, and then let me further assume that the vote of the people on this farm meeting is not somehow, like, conclusive. They don't actually have the authority. He's just taking their views into account. It's no different than elected officials anywhere who choose to speak only to Republicans or only to Democrats in order to get views on what they ought to do when they exercise their official duties. No one thinks that that's state action. And I understand you can think of a lot of odious behavior by government officials being discriminatory in whom they speak to and whom they listen to, but at the end of the day, the Constitution does not prohibit even odious behavior by private citizens. And I want to return here now to a point that Mr. Mupan said, which I really do think is maybe one of the most important points in this case, which is that a lot of the scare hypotheticals that the other side gives about public officials behaving badly if you narrow the state action doctrine can be taken care of by their government employers or by the state through statutes. The government as employer has much greater leeway to regulate than government as sovereign. And so this court has decided a number of cases in which government employees acting in their private capacities can nevertheless be regulated by their employers. And so if you're worried that there's not a code of conduct for government officials and how they comport themselves in their personal private capacities, such a code of conduct is better if it comes from the government employer. The questions that Justice Kavanaugh was asking Mr. Mupan, do you agree with Mr. Mupan's answers to all those questions, announcements of rules, policies, what have you? Yeah, I think that's basically right. If the duty is to provide access, so if there is a duty to say you must promulgate this information or notice and comment, for example, which means you must... No, no, no, no. I mean, it's not like there's a duty that says you have to announce the road closures. They're just, you know, you're in charge of road closures and you think it would be a good idea if citizens know about them. So you're announcing the road closures on your site. Yeah, and if there's not a specific duty to announce the road closure, which I gather is what you're saying, then if you choose to do it on your own site, that's exactly the sort of thing where we think the nature of the problem... Mr. Mupan said that as long as there wasn't a government site where the road closures were being announced, that that would be state action. If there's a duty to announce those, I took... It's not a duty to announce. You're in charge of road closures and you think it would be a very good idea if people understood where the road closures were. Yeah, and it's... Again, I don't want to speak for Mr. Mupan, but that sounds like the kind of thing that a private citizen could do. Let me give you an example closer to the school board case. There are often... Well, why don't we do my example, because how are you going to know where the road closures are? I mean, now you're being... I thought that we were starting off from a point of if the only place that somebody can know where the road closures are is on your private site, Mr. Mupan said that was state action. I was going to go on from there, but you seem to be contesting that. I guess our view is that if there's a specific duty to make that information available... It's not a specific duty, Mr. Joshi. Duties don't work like that. You're in charge of road closures. That's your duty, to be in charge of road closures. And if you are not obligated to talk about road closures and tell the public about road closures, if you do it on your private site, then I think you are probably acting in your personal capacity. Now, I agree, there may be duties to inform, and in those cases, if the only place you do it is on your personal site, that may well be state action, whereas if you do it on both sites, it wouldn't be. The Sixth Circuit seems to think that the duties have to be written. But many duties are customary, meaning, no, you're right. I think if you're in charge of road closures, I have very little doubt that there's a written law that says you must inform the public. But that is what everybody does. It's what tradition and process has always provided for. You're suggesting that that would not be taken into account. No, not at all. Quite the opposite. We agree that customs can define the duties. I think I was just saying... So you don't agree with the Sixth Circuit's narrow view that it has to be a written duty? We do not agree with the Sixth Circuit's view that it has to be written down. We agree that customs can inform what the duties are of an office. It's just if there is a duty to inform, then the discharge of that duty will be state action no matter where it takes place. But where there's doubt about it, if what you're doing is denying access to personal property, we ought to think you're acting in your capacity as a private property owner, not as an agent of the state. Thank you, Counsel. Justice Thomas? Justice Alito? Would it be practical to require or adopt a rule that puts a lot of pressure on public officials to separate their Facebook pages, just to take that example? So the official can have a personal profile. The official can have a campaign page. The official can have an official page. Those all sound like wonderful things that a state government can impose in its capacity as an employer. I don't think this court should impose it as a matter of federal constitutional law, and it certainly shouldn't be the case that the Constitution imposes that kind of precondition in order to exercise your personal constitutional rights. Mr. Mupon said that would be unrealistic for her. That would be asking too much of a lot of public officials. I do think it would. Take the example that Justice Jackson brought up with disclaimers. You might think, well, all you need to do is put up a disclaimer and that's it. Well, how good a disclaimer do you need? It doesn't have to be on every page. It's just kind of chill speech. Justice Sotomayor? Justice Kagan? Justice Kavanaugh? To pick up on what Justice Kagan was asking about the road closures and announcements of rules, announcements of information, and what have you, when I was discussing it with your friend, we were assuming that it wasn't also posted on the government site. It was only posted on the personal site. And then asking, okay, where does it cross the line into governmental? Why does it matter that it's posted on the government site or not? I guess it would matter because that would inform, just as you look at the facts of a case, whether you're acting in your personal capacity or in your official capacity, which metaphorical hat you're wearing. And if you've discharged your duty, again, assuming there's a duty to inform the public about these things, if you've discharged a duty on the official site and then you're amplifying it on your personal site, odds are when you do it on your personal site, you're doing it in your personal capacity. But if your boss tells you, go inform the public about this road closure and the only place you do it is on your personal site, you're probably discharging your official duties. Okay. So it sounds like both of you would have in essence a safe harbor that if you're reposting information on your personal site, that that's probably not going to be considered governmental. Yeah. And that's exactly right. And I think, you know, I take the point that the other side makes that that might be under-inclusive in some cases, but I think that's better because that is the purpose of the state action doctrine is to preserve an area of individual freedom and not hold the state responsible for conduct it really can't control. Thank you. Justice Barrett. So going to Justice Kagan's questions about announcements, et cetera, if individual posts on a personal site can ever be state action because you have a duty to make announcements, is that a situation in which your property framework where the presumption is just defeated because it's a personal account in which you sometimes use for official purposes? That's right. As I mentioned at the outset, if the official duty or authority or exercising is one that requires access, like notice and comment or an official school board meeting where the public can speak, then yes, that's state action, no matter where you do it. And your blocking of someone from accessing that particular action is going to be state action no matter where it occurs. But the word duty is important to you. So I asked Mr. Mupan about duty and authority. You're really leaning on duty and it seemed in your interchange with Justice Kagan that you saw a difference between duty and authority. Well, I think a duty, it's less obvious in these cases and more obvious in the next case where he's a subordinate with a supervisor. So duty is important because you need to know, is he actually discharging the thing he's supposed to do? An elected official like the school board members don't really have much in the way of those duties, but they do have authority. They can invoke the state's power to do something that someone who doesn't have the state power can't do. And so in that sense, duty and authority might be different. In Griffin, for example, that was a private security guard at the Glen Echo Park. But the reason he got his deputy sheriff certification was so that he could make his arrest and his kicking out of the trespassers more effective. People listen to deputy sheriffs in the way they don't listen to- That was authority, not duty, right? That was authority. Duty didn't arrest anyone. That's right. Justice Jackson? So can I just go back to Justice Alito's hypothetical, which I thought was really good, and ask this question. Suppose the public meeting doesn't occur. So we have the mayor of the town, and there's this controversial policy, and there is no public meeting to start because the mayor fears that there's going to be quite a bit of acrimony with people who want to come out differently than the mayor does. And so instead of the public meeting, the mayor says privately, I'm going to have a meeting on my farm, or maybe even announces the meeting, but we're only letting in people who are likely to agree with my view. Same result, no state action in that situation? I think probably no state action in that situation. I think it's something that government officials actually do all the time. They might not want to meet with even their own constituents who disagree with them. And they might speak only to Democratic Party meetings and only take feedback from Democratic Party donors. And the solution for that, as I said, for elected officials might be the voters, and for appointed officials and employees, the state as employer can regulate that kind of behavior, even if it's in its personal capacity. But it doesn't have to do so specifically. I mean, can we believe that, say, the mayor's duties include receiving feedback from the public if there was a vote? I understand you to be saying that he would have to, that even if it was on his farm, he couldn't block people or it would be considered an official state action. I think it would have to be a pretty specific duty for that to constitute state action. I think if the duty is too broad in general, like speak to constituents, I think that's exactly the kind of case that our heuristic, our test has a lot of purchase, which is if it's something that a private citizen can do, talk about a policy, get views on a policy, advocate for a policy, but also within a sort of broad conception of official responsibilities, then I think the nature of the property to which access to business. One final question, just as a sort of theoretical matter, does the government have any concern about the potential privatization of government functions that could occur? I mean, I suppose I'm a little worried about city mayors deciding to sort of shape the debate of the people in their community by having their meetings in public and private places so that others in the community can't comment. That seems to me problematic as sort of a theoretical matter, but the government I'm taking says as long as the mayor chooses to do this on private property, then he can exclude whoever he wants because he's doing it in his personal capacity. Yeah. I mean, in the brick and mortar world, I'm not aware of this being a problem. And if it is a problem, I think it's best handled by the state, which can regulate its employees in ways that a state of sovereign cannot. And I think that's the best place to handle those concerns, not a rule of conduct from this court as a matter of federal constitutional law. Thank you. Thank you, counsel. Ms. Carlin. Mr. Chief justice and may it please the court. I have three points to make. First, the district court found as a factual finding based on petitioners own testimony that quote, receiving feedback from constituents is an important part of their duties as trustees, California law, both decisional and constitutional and statutory, the PUSD bylaws, which I'll return in a moment. And the content and appearance of the page confirms that the finding, the district court's finding that these pages were quote, used as a tool of governance because the trustees were doing their job when they maintained and then blocked Dr. and Mrs. Garnier from these pages. This case fits comfortably within this court's declaration in West and Lugar that state employment is generally sufficient to render the defendant a state active. Second, the record in the district court contains O'Connor Ratcliffe's entire Facebook feed from the time she joined the board through summary judgment. Of the hundreds of posts, I found only three that were truly non-job related. Not only were the posts all related to her job as PUSD trustee, but the district court found that the content of many of the posts was possible only because of the trustee she was in the district court's words closed with the authority of state law. For example, O'Connor Ratcliffe's official position was why she could enter into classrooms during instructional time all over the district, something that would get anybody who was a private citizen arrested. Not only did she use these pages to provide information about her official activities that was available nowhere else, but she frequently solicited feedback from the public on board related issues and used the word we to do so. And I'd like to direct the court to page 48, 46, note 12 of the red brief where we cite the requirement by the board that you have a disclaimer if you're speaking in your personal capacity. She never put that disclaimer anywhere. Instead she asked people to contact her using her official government email account. And third, the pages that issue here are no sense campaign pages. The district court rejected that argument on pages 114 to 115 of the petition appendix. She did have a campaign website. That website had a personal email address, unlike her official email address here. I welcome the court's questions. Ms. Carlin, the petitioners here and respondents in the next case make much of the fact that if your broad definition of state action is accepted, that it would actually reduce speech by public officials. I'd like your reaction to that. No, it would not. No one has challenged the speech that was on these pages at all. If they're speaking as government officials, they have both the government's own protections. So for example, there are a number of protections that go to government officials when they speak in their official capacity. Plus they still have all of the first amendment rights as a backup. And I think it's really important to note here that all we're talking about is the state action issue. And the idea that government officials are not going to want to talk about their jobs at all, if you tell them it's state action just seems to me to be illusory. But I'm not sure about that. I mean, if it's a, if it's characterized as a state action governmental site, wouldn't anything they say be categorized as governmental speech on which the government could take a particular political, social, whatever view? Well, I think it's actually perhaps a little more complicated than that, Mr. Chief Justice, because these are elected officials and part of their duty is to talk about certain issues. And I think if the government told them they're simply not allowed to talk about their position on what the board is taking or the like, that itself would violate at least the California constitution and arguably the federal constitution. Just to make sure I understand it, you're we're characterizing a particular site as whether it's governmental source of governmental authority, you know, operated as a governmental duty or private. Now, if it's private, the people talking on it can say what they want. Their speech won't be limited. If it's governmental speech, you know, they have to do what the government tells them to do on that site. Well, I think the one thing that they do have to do, and I think this is fair. And there were a number of questions of the folks representing the petitioners here. They do have to have a disclaimer here to say, this is a personal site. They did not have this disclaimer. Ms. O'Connor Ratcliffe in bed said, says, if you want to contact me, contact me on my official government email account, which she's not allowed to use for personal or political purposes. Sorry. Your test is whether government officials are doing their jobs, right? That's the starting point. And it creates what I would say is a kind of rebuttable assumption that when a government officials doing her job, she is a state actor.  So the mayor is in the grocery store and is repeatedly approached by constituents. And the mayor listens, really doesn't want to be bothered, but listens to supporters and people who are sympathetic to the mayor's program. But with somebody who is a known opponent approaches the mayor, the mayor says, look, please call my office. Is the mayor doing his job when he's doing that? I think the answer to that question, which is I think different than the answer I would give in our case is that when they are clearly off duty, that is, you know, pushing the shopping cart down the aisle, arguably they're not doing their job, but when they create an ongoing site, like the site here, they maintain a forum, if you will, on in which people can comment and people can talk to each other. They're not just talking to the mayor. Then yes, that would be state action. I mean, elected officials have told me they're always on call. They're always doing their job. They're always being approached by constituents. But if they say they're doing their job, then yes, I would say the starting point is they're state actors. Now, can they say, I don't want to talk to you right now. You know, the ice cream is melting. Of course they can, because that's not violating somebody's first amendment. Yeah, but if they're discriminating on the basis of viewpoint and they're doing their job, then there's a problem, right? Arguably. Yes. But that's why I was saying that I think when you are clearly off duty, you're not doing your job. Even if you say you're doing your job, you're not, you're not acting in your official capacity. But here, there was a website. There was a Facebook page. The Facebook page says, if you want to talk to me, call, you know, contact me at my official office. What if she put all, what if all of her posts were done in the evening? They were all done between midnight and 1 a.m. Is she on duty then? Is she doing her job then? Yes. In the same way that if you stay up till midnight and you're reading briefs at home, you're doing your job. You're under color of law. Nobody has a first amendment right to come into your house, but of course you're a state actor. Could we go back to what you said about disclaimers? Would a disclaimer turn this immediately into private action? No, but it would be a much harder case for my clients to win. Why no? Well, because you could say on the top of your website, this is my personal website, but then be operating it as a tool of governance. Yes. So that's my, if it's the same content, and if you in fact are operating them as a tool of governance, but you have a disclaimer saying that you're not, that this is just you as a person. Well, I'm not sure that the court wants to have a magic words test for state action. And so you would still, I think have to look, but at least there the public would know and, and be able to take into account that you are not using this as a public website here. I think putting the disclaimer there, but then saying things like, we want you to respond to our surveys on whether we should change the election system. We want you to respond to our survey. We are working hard. She's not using I, and if you compare this to her campaign website, which is a website, not a Facebook page there, she uses I here, she uses we. And honestly, as Mark Twain said, the only people who should use we in the singular are royalty and people with tapeworms. And you know, I don't think she's either of those. Ms. Carlin, do you think you could win under the test proposed by the government and Mr. Muppet? Cause I mean, I feel like you're talking about doing your job and it seems like you're saying that she's exercising the authority of her office, whereas the ninth circuit focused on this appearance and function test of the website. But it seems to me that you're saying she was doing something more. I think we, we obviously went under the ninth circuit, but I think we win even under the sixth circuit test because of the duty. And I can, if you want me to kick through the different places where in state law and board rules, that was in your brief. So I, that's what made me think that you're saying. It doesn't really matter. You would win under that test. Sure. She had authority. No, I think we win under every test except a strong version of the solicitor general's test. Because under that, because Facebook itself, the Facebook account itself was not owned by the government. That's a hard test for us to win under. Now we still do. They've given that up because they're talking about function. Really? Yeah. I think so. Yeah. I mean, they said, if you do notice and comment, whether you have other postings is irrelevant. You're looking at the function of what's happening, correct? Yeah. So tell me how your test, doing your job, differs from the authority or duty test of the sixth circuit. Well, yes. Okay. Yes. I think the sixth circuit has a much narrower sense of what duty means and what authority means than we would say is encompassed in doing your job. I agree with you on duty. They require a written law on duty. And the government has already conceded that you can't look just to written law. So let's take Justice Barrett's point that authority is doing most of the work. And authority has a meaning. So go ahead. So as I read authority in both the government's brief and the sixth circuit, they're treating authority as you're exercising some coercive control over a member of the public. I take authority to be something quite different than that. Give me a, you're going to have to explain that. Okay. So if I understand the government's brief correctly, what the government says is, well, of course, even if you were using private property, if you're using it to coerce somebody. So on your private website, you said to somebody, you're fired. And that has the force of law. That would be state action. Because you're using an authority that only you have. Right? They admit that noticing comments would not be coercing someone. No. But I mean, I take it what they're talking about there is a particular kind of authority. Now, some of the posts here are because of her authority as a state actor. The modal post on the site, I would say the thing that is most common on the site is that she goes and visits the classroom with the superintendent or with a, a principal during instructional time. The only reason she can ask to do that, the only reason she has the power to do that is because of her official capacity. No person could do that. No, no member of the public. Presumably that's not put on the official site, whatever that. No. It exists only on this site. As far as we know, the only place that you could go to find out about her, basically your argument is that it facilitates her government authority, facilitates her doing a government function and permits her to video it and put it, put it on the site. Yeah. I'm not sure how many videos there are, but yes, she has reports of them. But just, if I could get you to say that in one bit, if you said, you know, the, the right way to think about duty and authority, if you want to use those words is what? The right way to think about duty is to look at the various, various sources of state law that tell you what somebody's duty is. And here we've got the California constitution, the board bylaw, stepping back from your case, which I know you want to win your case and, but just stepping back and saying, what's is it? Does the sixth circuit have too narrow a view? I thought you were saying, yes. How is that true? Why is that true? Because the sixth circuit says, unless there's an affirmative command that obligates you to do the specific thing you are doing in the specific form you are doing it, you're not doing your duty. And we think that duty has a much broader conception. And I want to be clear. Which is what? Which is you look to what does state law tell you what to do? What does history and tradition tell you what to do? What do the bylaws of your organization tell you to do? If there's a handbook, what does the handbook tell you to do? And those things can be optional. They can be acting in your discretion. This court has repeatedly said in a number of different contexts, going back to the McDaniel case in 1833, if you're talking about really people with, with important government jobs, it's not all going to be written down. I guess I'm, I'm, I'm a little confused as to what's at stake here, because I hear you saying now it isn't a matter of appearances. It isn't whether a reasonable person might make a mistake, which was kind of the ninth circuit's reasoning. It really does boil down to duties and authorities. And you're positing that those duties and authorities include beyond what's in a handbook. There must take account of custom, but I had understood the solicitor general to say exactly the same thing. So are we coalescing around a test that everybody more or less agrees on? Well, I want to be very clear. I was talking about duties, authorities in the context of justice Barrett's question. We think that the appearance and function are also relevant to whether someone is engaged in state action. I took her question to be, if you take the sixth circuit's verbiage, I'm asking, yeah, what's wrong with something like that? Is there a problem with, I mean, it seems like this discussion does seem like it's coalesced around an understanding of duties and authorities. And there's some discussion about how capacious that has to be, but really the discussion seems to me like you and the solicitor general are on. Here's the one thing that we're missing. Here's the one thing that worries me there. And it goes back to this court's decision in home telephone and telegraph in 1912, but also involves Monroe against tape, which is lots of times people do things that they're forbidden to do in the course of their job. And they are nonetheless acting under color of law. Yeah. We're all sensitive to Monroe versus tape and the Griffin case and all of that. Everybody is, but given that it would, do you see any problem with what we've been articulating here? And you have with the justice Kagan as, as to any of that, I have no problems with the things I've said so far. I just think it's more capacious than just that, that in trying to figure out whether someone is acting as a state actor, when you start with someone who's a government official. And I think it's really important to remember that this court has had in its entire history, as far as I can tell about three or four cases where the question was whether a government official was a state actor. And in all of those cases, except Polk County against Dodson, which was the case about public defenders, of course that of course you're a, you're a state actor if you're a government official. So I think the presumptions and the rules of thumb and the like operate a little bit differently here than they would operate in a case that involved someone who was clearly just a private actor. And you're asking, are you, can you push them over the line into being a state actor here? We start with somebody who looks like a state actor says, email me on my government official account. If you've got any questions, says I, this is the official page of me uses the photo. I'm like, and I do think all of that helps. I understand you want to win your case as you said to justice Kagan, but we have to be concerned about, about the test. Now I understand you to have said that you would define duty to include a custom, a well-established custom. And is it not a well-established custom for any elected public official to inform constituents about what he or she is doing? So if that's how you understand duty, then are you not saying that anything that a, an elected public official, let's leave it at that tells constituents about what that person is doing falls constitutes state action. I think the starting point is yes, they could rebut that. For example, talking to, you know, at Thanksgiving dinner, somebody says, pass the gravy and you say, and I also passed a bill last month. Yes, that would be, that would be a private. Whereas, whereas when you set up, and this is what the, this is what the ninth circuit says on page 28 day of the pet app is the state action here is maintaining an ongoing site for the, for the exchange of information. I understand that. But what I'm, my, my, what I'm getting from this is that you have taken the, the six circuits test and the petitioners test, and you have broadened it by defining custom by defining duty. So broadly, and maybe this is right, but you have made it into a very broad test, a very inclusive test. I think if you want to use the words that the sixth circuit used as your guidance, you have to broaden and our case would clearly fall on the side of, or let me go back to, to the, to your wording and ask you to finish this sentence for me. Yeah. A public official is doing his or her job. When, when, if you look at state law and you look at the bylaws, they presuppose that they will engage in precisely the kind of action that you're challenging. Well, I have two, if you're a white house press secretary and you have a dinner at your house and you invite over certain members of the press and not other members of the press, because part of what you think makes you a good press secretary is to get feedback and develop good relations with members of the media. Is that state action? Can I take that question and, and kind of flip it around and go backwards into it? There would be no constitutional claim by anybody, no meritorious constitutional claim that they have a right to come to your dinner. Someone who's excluded on the basis of viewpoint. So you're inviting friendly reporters or who you perceive to be friendly reporters, commentators. I think that anybody who looked at just a dinner, as opposed to you, don't allow people to show up at press briefings altogether. I would be prepared to say that there you are enough off duty and you are clearly enough off duty because. How about a regular meeting? No food is served, but a regular meeting off site. So not at the white house with certain members of the press and not others. I think the members of the press put us in a somewhat different position because already you're entitled to limit that in a variety of ways. But if you had a public meeting, for example, in California, a lot of our elected representatives have what they call sidewalk office hours and they'll sit in the bank parking lot next to the farmer's market and they'll talk to anybody and they'll hand out stuff. If they decided simply because they were sitting on the banks, parking banks, parking lot, instead of in their office, I'm not talking to black people. I'm not talking to Muslims. I'm not talking to evangelicals. Yes. They'd be engaged in state action and yes, they'd be violating the constitution. A different attack. Now on the reposting question I was asking your friends on the other side about if you're a government agency, if you have any issues of notice and you then repost it. Well, our case is not about particular posts at all. Your thoughts on that issue, if you have any, if you don't want to answer. I haven't given a lot of thought to it because it's not relevant to our case in particular, but I think it's going to be very relevant to the opinion. Well, this is what I would say is there. If what you're talking about is whether a particular post is state action or not, it may well be that simply reposting something isn't itself state action such that you could challenge your being, you're having your comments to that post deleted. But if you were blocked altogether from a website on which they have invited the entire public to share across the public as well as with you, what they think, then yes, that would be state action and it would be actionable under the first amendment. Ms. Carlin, I just want to be sure that I'm clear about your position. In your test, you're doing your job test. So you agree, it seems like, that the Ninth Circuit test of appearance and function is enough. You wouldn't go with that. I think that the function part of the Ninth Circuit's test, because they quote this language that the district court's findings made about this being a tool of government, is the appearance and function. When they're talking about function, they're talking about, are these people doing their job? As the function of this is for them to do their job of getting. How about the appearance part? Well, the appearance is really helpful in figuring out what is the function. So it boils down to the function in your mind. Yeah. But the function is sort of another word for duty in your sense. Like a duty is a responsibility, is a function. They're all kind of tied up together. Yeah. I mean, your duty is to do your job and that's your function. If you do your job, you're doing the function of being a trustee of the Poway School District. Which brings us back to, this is all a question of how broadly do we define authority or duty? I think you have to define it more broadly than petitioners. Oh, no, I understand that, but I'm just saying that is enough of the case as you see it. The case totally boils down to how you define it. And I asked the other side a bunch of questions about what work does duty do? Is all an authority? I think you would say, if I understand your position correctly, it's just about authority. We're not really looking at duty. No, we are looking at duty. That's exactly what I'm trying to say is duty. Are you performing the duty of your job as a trustee? If you are, then you are presumptively a state actor. That's what the court's statements in West and Lugar turn to. You would say duty is having conversations with citizens is always part of your duties, or almost always part of your duties, which converts every conversation you have. No, I would say having some mechanism by which you can interact with your constituents is part of your duty. And the board bylaws say this. They say the responsibility of board members in their role as community leaders is to participate in public discourse, and then they say board members have a responsibility to identify personal viewpoints as such, and not as the viewpoint of the board. And here what you have is both of the petitioners using we and our when they talk about what the board is doing, and anybody who looks at that is going to think, this is an official website. It looks like an official website. It performs all the functions of an official website. There's no disclaimer anywhere. She has a separate campaign website. She uses her government email. Now suppose there's an official website, too, and this partly, largely, entirely duplicates it. So this goes back to the question that Justice Kavanaugh was asking. How does that matter, or does it matter? I don't think it would matter if it was the website at issue here, and I really do urge you to take a look at ECF 3511, which has the entire feed from the day she took office until the day of the summary judgment motion, and I defy anyone to look at that and think this wasn't an official website. Indeed, when she wants to give you her personal opinion, she sends you a link to her campaign website. And I take it that this is the crucial difference between you and the government, right, that they just say Facebook says it's her private property, and so it's not an official website by definition, and you're saying no. That's correct. And I'm sorry to be hung up on this duty question, but what if the bylaws or the state law doesn't say it's your duty to communicate with constituents, give announcements, et cetera, but she decides, hey, constituent communication would be a good idea. This is kind of like, well, the governor decides to do this or the president decides to do this. Is that not, even if it's not formally in her job description, and even if she's the first one to do it, so it's not custom, but we would say she has the authority to decide to be a mouthpiece for government. Would you agree that that would be? Yeah. If I can just say it's a little complicated in our case because the board has specifically said she doesn't have the authority to speak for the board, and that's why she's supposed to have a disclaimer. But if you're talking about a hypothetical of someone in another jurisdiction where there's nothing that says anything either way and she decides she has the authority, then it would come down to a question of, as a matter of state law, did she have that authority? Because if she had that authority, then, yes, she would be a stay actor. Now, most government workers, most government employees do not have the authority to speak for the government, and so it wouldn't be part of their duty to run a personal website. And so for most government officials, you know, if you're the janitor or the school bus driver, I mean, that's making it too easy. There are a vast number of government officials around the country at the local, town, city level. So I don't think you can minimize this by saying, oh, it's not going to affect certain categories. It's going to affect a lot of people. But at the very least, the other side says here, at the very least, you know, if the state wants to tell you not to do this, they can do that. And the answer here is the Poway School District told her not to do this, told her not to have a website that looked as if she was speaking officially, and this website did exactly that. Just on the custom question to follow up on, Justice Barrett, it's usually, I think, as you're describing it, going to be part of the custom of most of these jobs that are elected officials or appointed officials who have some authority to communicate with constituents. I don't think that that's necessarily true at all. When would it be true? It will be true for elected officials. It will be true for some government officials. But let me give you a hypothetical that I think will illustrate this. So if a public school teacher in Poway had a website that was communicating with the parents of children in her class, that would clearly be state action. And I think that would be true regardless of what she called the website. If she then also wanted to talk about things like whether the board should be elected at large or by districts, which was a big issue here, or she wanted to talk about whether the schools were being mismanaged, which is something that for a while there was a real problem, that would be her speaking in her personal capacity because that wouldn't be coming from her job and her duties as a schoolteacher. So just to kind of wrap up, I think... This is a little bit anticipates the next case. If there were also some personal things on this site, how far does that take you? Can you dilute the site and turn it into non-state action by putting up your kids' pictures? I don't think one picture of your children turns something into not a state website. Here, I really do think if you look at this website, you will find one picture of her children on Christmas, one picture of her children at some school-related event, one picture of her grandfather on Veterans Day, and nothing else that is clearly personal as opposed to coming out of her job. Here's the thing to understand, and this goes back to something that Justice Kagan said earlier, which is there are First Amendment issues on both sides of this case. And here, the First Amendment provides a tremendous backstop for members of school boards and the like who want to regulate their sites. There are rules about public forums. There are rules about time, place, and manner and the like, and they have a lot of control over what goes on on these websites. But if you decide the threshold state action question against my clients here, refusing to find state action would have devastating consequences for the public because they would be denied access to the sites on which their officials are talking to them and asking for their reaction. Thank you. Thank you, Counsel. Justice Thomas? Justice Alito? Justice O'Mayor? In some ways, you've complicated things. I'm sorry. No, really. Because what we're being asked to find is whether the state was acting when these government officials turned off these sites. So we're being asked to hold the state responsible for ultra-virus activities because these officials were told specifically, you're telling us now, don't do this and they did it anyway. No, ma'am. Just as in the red brief, in Monell, the court said you can't hold the government responsible, the municipal government responsible, unless the unconstitutional action was pursuant to a policy. But there was nonetheless a constitutional tort there for which individual government actors could be held responsible. Thank you. Justice Kagan? Justice Gorsuch? Justice Kavanaugh? Justice Jackson? Thank you, Counsel. Rebuttal? Thank you, Your Honor. So first, on the appearance question, I think my friend said appearance is relevant in assessing whether there's duty or authority, but basically gave up the notion that the Ninth Circuit adopted that you can use appearance as a freestanding trump over duty and authority. I think that concession is basically right because the power to block doesn't come from the appearance, and I think she would have to concede my hypothetical where the police officer runs down the street in his uniform is not state action. So then I think the action really does come to how do we define duty and authority. And I think the fundamental problem with Ms. Carlin's submission is that she's defining it too broadly. She's doing exactly what this Court said in Kennedy in Lane you should not do, because you have to recognize that government officials have the right to speak in their personal capacity about their jobs. That's even true about information they only learned because of their jobs. Ms. Carlin emphasized several times that my client spoke about stuff they learned in the classroom. That's this Court's decision in Lane. The square holding of Lane was that it was individual speech, not employee speech, even though it was information learned while in office. And the flip side of that problem is that if you treat this too broadly, the problem that this Court recognized in both Kennedy and Garcetti, the Chief Justice adverted to this, if you treat this as duty and authority just because you're talking about your job, that means it's controlled by the state. It amounts to government speech, which means the state itself could tell individuals what to say on their pages, and that's the harm with creating the sort of you have to have a disclaimer rule. If individuals don't put up a disclaimer, all of a sudden not only do they lose their right to exclude people from their pages, they have now opened themselves up to having the state itself tell them what to say on their page, not as a regulation. I agree with the federal government that the state has a lot of power to regulate them as employees, but Ms. Carlin's position means that they could regulate them as such. They could tell them exactly what to do or say on the page, and that would be a serious First Amendment problem. And to say that the First Amendment does all of that because they didn't put up a disclaimer would, I think, turn the First Amendment on its head. Finally, a few points about the facts of my case, because I, too, would like to win for my clients. So the first point I'll make is that this is laid out in our reply brief. If you look through the citations to the record, the only duty that my clients had to interact with the public was at their board meetings, which they complied with, and no one was ever blocked from that. Everything else is the same sort of over-broad, it's your duty to talk to people that would cover campaign rallies, talk to your neighbors at church, the stuff that cannot possibly be viewed as governmental unless you swallow individual First Amendment rights. She suggested that the page was somehow their duty. One of my clients closed the page, just shut it down. No one thinks he was acting in breach of his office, he was in dereliction of duty. Your Honor, I see my time is up. Thank you, counsel. The case is submitted.